IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) Case No. ) |
| v. | ) ) |
| JOSEPH GORMAN, TERRY COOPER, MARCUS E. SMITH, and KELSIE SMITH, | ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff Ohio Security Insurance Company ("Ohio Security"), by and through its attorneys of record, for its complaint states and alleges as follows:

## PARTIES

1. Plaintiff Ohio Security is an insurance company incorporated and existing under the laws of the state of New Hampshire, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts. Ohio Security is, accordingly, a citizen of New Hampshire and Massachusetts.

2. Defendant Joseph Gorman is an individual resident and citizen of the State of Texas.

3. Defendant Terry Cooper is an individual resident and citizen of the State of Missouri.

4. Marcus E. Smith is an individual resident and citizen of the State of Missouri.

5. Kelsie Smith is an individual resident and citizen of the State of Missouri.

## JURISDICTION AND VENUE

6. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, because this dispute is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to this dispute occurred in this District.

## FACTUAL ALLEGATIONS

8. On or about January 8, 2019, Joseph Gorman, through his insurance agent Hibbs-Hallmark & Company, submitted an application for insurance with Ohio Security.

9. Gorman represented himself to be the unincorporated sole proprietor of an asphalt paving business located in Stamford, Texas.

10. Gorman applied for a commercial auto policy, a commercial general liability policy, and an inland marine policy.

11. Gorman applied for a commercial auto policy to insure several vehicles, which he represented were principally garaged in Stamford, Texas.

12. One of these vehicles was a 2001 Freightliner dump truck, VIN 1FUJAHC611LG85623.

13. In connection with his application to insure the dump truck, Gorman represented that the vehicle was garaged in Stamford, Texas.

14. In connection with his application to insure the dump truck, Gorman represented that the vehicle would be operated only locally to Stamford, Texas, within a radius of 50 miles from the town.

15. Gorman and/or his agent completed an application form titled "Texas Commercial Auto."

16. The application identified Texas-specific insurance coverages to be obtained, including liability, personal insurance protection, uninsured motorist, collision, comprehensive, and hired auto physical damage coverages.

17. The only drivers of the vehicles insured under the commercial auto policy identified in the application for insurance were Ricky Brown and Robert Clark.

18. The application represented that Brown and Clark held Texas drivers' licenses.

19. Gorman identified his mailing address as being a post office box in Fort Worth, Texas.

20. The Texas Commercial Auto application form contained the following language:

> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND CIVIL PENALTIES.

21. At the same time that Gorman applied for a commercial auto policy, he also applied for a commercial general liability policy, identifying the location of his insured business as 904 N. Swenson St., Stamford, Texas 79553-7316.

22. Gorman represented that he engaged in asphalt paving and repaving.

23. At the same time, Gorman applied for a commercial inland marine policy, to insure certain equipment, including a skid steer, roller, and paver.

24. Gorman identified the location of the equipment as being at 904 N. Swenson St., Stamford, Texas 79553-7316.

25. In reliance upon the representations made in Gorman's applications for insurance, Ohio Security issued a commercial auto policy, a commercial general liability policy, and an inland marine policy to Joseph Gorman, for the policy period January 7, 2019 to January 7, 2020.

26. In reliance upon the representations made in Gorman's applications for insurance, Ohio Security renewed the commercial auto, commercial general liability, and inland marine policies for the policy period January 7, 2020 to January 7, 2021.

27. Each of the commercial auto policy, the commercial general liability policy, and the inland marine policy are subject to Texas-specific limits, forms, endorsements, terms, and conditions.

28. On November 2, 2020, the 2001 Freightliner dump truck, VIN 1FUJAHC611LG85623, insured by the commercial auto policy issued by Ohio Security, was involved in a serious motor vehicle collision in Kansas City, Jackson County, Missouri.

29. The dump truck struck and caused serious injuries to Marcus E. Smith, who was then operating a motorcycle on a public street in Kansas City, Missouri.

30. The dump truck was, at the time of the accident, being driven by Terry Cooper.

31. Terry Cooper was not a driver identified in Gorman's application for the commercial auto insurance.

32. At no time, prior to the collision, did Joseph Gorman inform Ohio Security that he sought to have Terry Cooper authorized as a driver under the commercial auto policy.

33. At no time, prior to the collision, did Joseph Gorman inform Ohio Security that the 2001 Freightliner dump truck, VIN 1FUJAHC611LG85623, would be operated in Kansas City, Missouri.

34. The accident occurred approximately 600 miles away from Stamford, Texas.

35. Ohio Security would have declined to issue coverage to Gorman if it had known that the insured vehicles would be operated more than 200 miles from the location in which the vehicles were represented to be principally garaged.

36. A radius of operation of 200 miles is considered by Ohio Security to be a "long distance risk."

37. Ohio Security does not insure long distance risks under commercial auto policies.

38. Ohio Security would not have expected the radius of operations for an asphalt paving business to have been more than 50 miles from the principal location of the business.

39. The commercial auto policy has a $1,000,000 limit of liability per accident.

40. Joseph Gorman, Marcus E. Smith, and Smith's wife, Kelsie Smith, have made demand upon Ohio Security to pay more than the limit of liability of the commercial auto policy.

41. Accordingly, the amount in controversy exceeds this Court's jurisdictional threshold.

42. A real and present case and controversy exists between the parties.

## COUNT I – RESCISSION.

43. Plaintiff Ohio Security realleges and incorporates by reference paragraphs 1-42.

44. Joseph Gorman misrepresented facts that were material to the risk insured.

45. Joseph Gorman's misrepresentations contributed to the contingency or event on which the policy became due and payable.

46. Ohio Security has no adequate remedy at law.

WHEREFORE, plaintiff requests that the Court enter its judgment rescinding the commercial auto policy.

## COUNT II – DECLARATION THAT THE AUTO POLICY AFFORDS NO COVERAGE FOR THE COLLISION BY VIRTUE OF THE POLICY'S CONCEALMENT, MISREPRESENTATION, AND FRAUD PROVISION.

47. Plaintiff Ohio Security realleges and incorporates by reference paragraphs 1-42.

48. The commercial auto policy provides:

> B. General Conditions
>
> . . .
>
> 2. Concealment, Misrepresentation Or Fraud
>
> This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

  a. This Coverage Form;

  b. The covered "auto";

  c. Your interest in the covered "auto"; or

  d. A claim under this Coverage Form.

49. Joseph Gorman made a representation to Ohio Security.

50. The representation was material.

51. The representation was false.

52. When Joseph Gorman made the representation he knew it was false or made the representation recklessly and without knowledge of its truth.

53. Joseph Gorman made the representation with the intent that Ohio Security act on it.

54. Ohio Security justifiably relied on the representation, to its detriment.

55. Joseph Gorman deliberately failed to disclose material facts to Ohio Security.

56. Additionally or alternatively, the facts changed in a manner that made Gorman's earlier representation to Ohio Security untrue or misleading.

57. Joseph Gorman made a partial disclosure that created a false impression.

58. Joseph Gorman voluntarily disclosed some information, creating a duty to disclose the whole truth.

59. Gorman had a duty to disclose such facts to Ohio Security.

60. Ohio Security was ignorant of the facts and did not have an equal opportunity to discover them.

61. Gorman intended Ohio Security to act or refrain from acting based on the nondisclosure.

62. Ohio Security in fact relied on the non-disclosure, to its detriment.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, plaintiff requests that the Court enter its judgment declaring that the commercial auto policy does not afford coverage for the Kansas City collision because Joseph Gorman intentionally misrepresented facts material to the risks insured and on which Ohio Security relied to its detriment in issuing the commercial auto policy.

**COUNT III – IN THE ALTERNATIVE TO COUNTS I AND II, DECLARATION THAT TEXAS LAW APPLIES TO THE RIGHTS, DUTIES, AND OBLIGATIONS OF THE PARTIES TO EACH OTHER.**

63. Plaintiff Ohio Security realleges and incorporates by reference paragraphs 1-42.

64. Ohio Security issued a commercial auto policy to Joseph Gorman in Texas.

65. In his application for insurance coverage, Gorman represented that the 2001 Freightliner dump truck, VIN 1FUJAHC611LG85623, involved in the Kansas City collision would be garaged in Stamford, Texas.

66. Gorman represented that the dump truck would be operated within a 50-mile radius of Stamford, Texas.

67. The dump truck involved in this collision was registered in Texas with a Texas license plate.

68. The commercial auto policy is subject to Texas-specific endorsements, the Texas motor vehicle financial responsibility law, and other Texas-specific terms and conditions.

69. The commercial auto policy nowhere makes any reference to Missouri in any way.

70. If the commercial auto policy is not rescinded or declared to afford no coverage with respect to the Kansas City collision, Ohio Security has certain rights, duties, and obligations under the commercial auto policy.

71. Joseph Gorman has certain rights, duties, and obligations under the commercial auto policy.

72. The parties' respective rights, duties, and obligations to each other are contractual in nature.

73. The contract was entered into in Texas.

74. The contract evidences a choice of Texas law by its terms and conditions.

75. The parties mutually understood, agreed, and intended that their respective rights, duties, and obligations to each other were to be governed by Texas law.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, plaintiff requests that the Court enter its judgment declaring that the commercial auto policy is governed by Texas law and the parties' respective rights, duties, and obligations to each other are governed by Texas law.

**COUNT IV – IN THE ALTERNATIVE TO COUNTS I AND II, DECLARATION THAT THERE WAS NO *STOWERS*-TRIGGERING DEMAND TO OHIO SECURITY.**

76. Plaintiff Ohio Security realleges and incorporates by reference paragraphs 1-42.

77. Under Texas law, an insurer's duty to settle is known as the *Stowers* duty, in reference to *G.A. Stowers Furniture Co. v. American Indemn. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929).

78. On December 4, 2020, counsel for Marcus and Kelsie Smith transmitted correspondence advising that he would resolve the Smiths' claims against Joseph Gorman and his hired driver, Terry Cooper, in exchange for "payment of all applicable policy benefits under the policy/polices affording coverage to your insured(s)" and:

> [A]n affidavit from Liberty Mutual as to the existence of any and all applicable policies, primary or excess, and the names and contact information for each insurance agent issuing any auto, CGL and work comp policy to Mr. Gorman and/or Mr. Gorman business(es) as well as a copy of all applicable polices in your possession. Of course, this requested information would also include identification of any potential policies that may apply that were secured by the company that supplied the asphalt being hauled at the time of the crash.

79. The claimant's attorney made it clear that this required payment of the limits of insurance policies issued by companies over which Ohio Security has no control, including "any potential policies that may apply that were secured by the company that supplied the asphalt being hauled at the time of the crash."

80. The demand required Ohio Security to identify, under oath, "contact information for each insurance agent" that issued any insurance policy that might be applicable, including, "of course," the policies issued to the company that supplied the asphalt.

81. The demand further stated that, even if Ohio Security met these conditions, the Smiths reserved the right to continue to pursue litigation against Gorman and Cooper to identify any other insurance that they believed might be available.

82. The claimant's demand was not a demand that Ohio Security settle for the payment of its commercial auto policy limit.

83. The demand conditioned settlement upon conduct by one or more third parties, including one or more unrelated insurance companies, over whom Ohio Security had no right of control.

84. The demand required payment of sums in excess of the limit of Ohio Security's commercial auto policy.

85. Because the claimant believed there was other applicable insurance in existence, not issued by Ohio Security, Ohio Security could not accept the demand by paying its own limit of coverage.

86. The demand required Ohio Security to undertake conduct, including making representations under oath regarding matters not within the personal knowledge of Ohio Security, that exceeded paying the limit of the commercial auto policy.

87. The demand did not offer an unconditional full release of the insureds in exchange for a sum equal to or less than Ohio Security's commercial auto policy.

88. The December 4, 2020 demand was not a *Stowers*-triggering demand.

89. Ohio Security did not breach any duty to settle owed to Joseph Gorman.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, plaintiff requests that the Court enter its judgment declaring that the December 4, 2020 demand was not a *Stowers*-triggering demand.

WALLACE SAUNDERS, P.C.

/s/ Angela M. Clark
| | |
|---|---|
| Angela M. Clark | MO #52159 |
| John L. Kellogg | MO #46533 |

10111 West 87th Street
Overland Park, KS 66212
Phone 913.888.1000
Fax 913.888.1065
aclark@wallacesaunders.com
jkellogg@wallacesaunders.com
ATTORNEYS FOR PLAINTIFF
OHIO SECURITY INSURANCE COMPANY